WILLIAM C. BARNES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ADELAIDE C. BARNES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EUGENE FOX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 17410, 17411, 20535. Promulgated October 17, 1929.

*A. B. Mason, Esq.*, and *Myron A. Finke, Esq.*, for the petitioners. *Eugene Meacham, Esq.*, for the respondent.

1006

#### OPINION.

Morris: The question presented by these proceedings is whether the payments made by the committee to Eugene Fox and William C. Barnes were gifts, or whether these payments constituted additional compensation. The petitioners contend that the payments which they received were gifts either from the stockholders of the holding company, or from the holding company itself. Respondent contends that the holding company and the railroad company were parts of one system, and that since the various letters, minutes, and resolutions repeatedly used the terms " payment," " additional compensation," and " bonuses to the employes," etc., it is clear that the intention was to pay the petitioners additional salaries rather than to make gifts.

The facts have been set forth in considerable detail so that a complete picture of what transpired during the period of readjustment and merger would be clearly presented. The acquisition of the El Paso & Southwestern System by the Southern Pacific Co. was accomplished by an exchange of stocks and bonds of the Southern Pacific Co. for the various stocks, including the stock of the railroad company, that were owned by the El Paso & Southwestern Co. By virtue of this exchange the holding company lost all of its assets and was left with only its franchise, because under the proposed plan the stocks and bonds of the Southern Pacific Co. were paid over to the Hanover National Bank of New York City for distribution directly to the stockholders of the El Paso & Southwestern Co.

As a part of the proposed plan, the directors of the holding company requested their stockholders to authorize them, in recognition of the long and faithful services of the officers and employees of the railroad company, to pay such officers and employees " additional compensation," and that they be authorized to set aside a sum for that purpose, not to exceed $1,000,000, from the bonds turned over by the Southern Pacific Co. This disbursement was authorized by the stockholders of the holding company by signing and returning the letter addressed to George Notman, secretary of the holding company, which has been set forth in our findings. The letter of authorization was signed by all the stockholders of the holding company and the committee forthwith, and without further corporate action, undertook, among other things, to distribute the fund, in the amounts that were designated by the heads of the various departments of the railroad company, to the officers and employees of that company. The funds distributed were secured by selling the $1,500,000 of Southern Pacific Co's bonds, which bonds were appropriated for that purpose under and by virtue of the authorization from each stockholder of the holding company, thereby diminishing his or her proportionate interest of the amount secured from the Southern Pacific Co.

We have heretofore said, in *Estate of David R. Daly*, 3 B. T. A. 1042, that " the essential elements of a gift are an intention to give, a transfer of title or delivery, and an acceptance by the donee." The intention to give in these proceedings is to be found in the letters and reports, portions of which are set forth in the findings. While these letters indicate that the payments to officers and employees were denominated under various terms as bonuses, additional compensation, etc., it clearly appears that there was an intention to give a sum, not to exceed $1,000,000, to the officers and employees of the railroad company. There can be no doubt, and it is not questioned, that there was a transfer or delivery of the amounts here in question, nor is there any doubt as to the acceptance of these amounts by the petitioners. It remains to be determined whether the terminology used, namely, " additional compensation " and " bonuses to employees " actually portrays the results that were here accomplished.

It is our opinion that the petitioners actually received gifts rather than additional compensation or bonuses and that the situation is very similar to that decided by the Circuit Court for the Third Circuit in *Jones* v. *Commissioner of Internal Revenue*, 31 Fed. (2d) 755. In each case we have the stockholders individually, without obligation on their part and without any consideration then or theretofore having been received or rendered, giving money or securities

for the purpose of creating a fund to reward the officers and employees for long continued and efficient services. So far as the stockholders of the holding company were concerned, no possible benefit could accrue to them from their donations, and their contributions were inspired only by the desire fittingly to reward past services from which they had indirectly benefited. In fact this case would seem to be a stronger case for petitioners than the *Jones* case, *supra*, because the donors were stockholders of a corporation other than the one by which petitioners had been employed.

We are, therefore, of the opinion that the respondent erred in including the amounts in question in the petitioners' income for the taxable year.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*